UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:09-CR-07-ART |
| | ) | |
| v. | ) | OPINION & ORDER |
| | ) | |
| CHRISTINA ROSE DENHAM and | ) | |
| BRANDON BRUCE PITMAN | ) | |
| | ) | |
| Defendants. | ) | |

* * * * *

The District Judge referred pending motions for rearraignment to the undersigned. *See* DE #53 (Order). The Court commenced a Rule 11 hearing as to Defendant Christina Rose Denham after receiving her consent, *see* DE #56 (Consent), and the hearing as to Defendant Brandon Bruce Pitman was set to follow.

The Government has charged Denham and Pitman with conspiring to threaten bodily injury to a person for "providing information related to the possible commission of a federal offense . . . to a law enforcement officer, a violation of 18 U.S.C. § 1513(b)(2)." *See* DE #27 (Superseding Indictment). Both Defendants allegedly made threatening calls to a confidential informant.

While evaluating the factual basis of the matter, the Court queried the parties over the breadth of the intent requirement in 18 U.S.C. § 1513(b)(2), the witness retaliation charge at issue. Specifically, the Court asked whether the United States must prove, as an essential offense element, that Defendants knew of the federal nexus – i.e., the "possible commission of a Federal

1

offense" and the transmission of information to a "law enforcement officer," as defined in 18 U.S.C. § 1515(a)(4).

Because a federal offense must underlie a guilty plea,[1] the Court halted the Rule 11 hearing to permit briefing of this statutory question. Defendants and the United States have submitted briefs in turn, advancing their positions, *see* DE #63 (Response Brief); DE #64 (Pretrial Memorandum); DE #69 (Response Brief); DE #72 (Reply Brief), and the matter is ripe for decision. For the reasons stated below, this Court finds that, to convict under § 1513(b)(2) in this case, the Government must prove that Defendants knew a "law enforcement officer," as defined in § 1515(a)(4), received information from the retaliation target. The Rule 11 colloquy indicates that Denham does not admit to this part of the crime, foreclosing rearraignment.

Statutory Interpretation of § 1513(b)(2)

The Court interprets § 1513(b)(2) to determine the nature of the specific intent Defendants must have possessed. The statutory section at issue reads as follows:

(b) Whoever knowingly engages in any conduct and thereby causes bodily injury to another person or damages the tangible property of another person, or threatens to do so, with intent to retaliate against any person for--

(1) the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in an official proceeding; or

(2) any information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings given by a person to a law

---

[1] Thus, "[u]nder Rule 11(b)(3), the district court is required to ensure, based on the statements of the prosecuting attorney and the defendant and any other appropriate sources, that **all elements of the offense, conduct and mental state, are satisfied by the defendant's admission**." *United States v. Anders*, No. 07-6382, 2009 WL 1649192, at *2 (6th Cir. Jun. 11, 2009) (unpublished) (emphasis added).

enforcement officer;

or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1513(b). The term "law enforcement officer" is, in this statute, a term of art:

(4) the term "law enforcement officer" means an officer or employee of the Federal Government, or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant–

(A) authorized under law to engage in or supervise the prevention, detection, investigation, or prosecution of an offense; or

(B) serving as a probation or pretrial services officer under this title.

18 U.S.C. § 1515(a)(4). Thus, a law enforcement officer, for § 1513 purposes, is a federally connected officer.

Interpreting a statute begins with "the language of the statute itself to determine if its meaning is plain." *United States v. Parrett*, 530 F.3d 422 (6th Cir. 2008) (citing *United States v. Wagner*, 382 F.3d 598, 607 (6th Cir. 2004)). Plain meaning emerges from "the language and design of the statute as a whole." *Id.* If the meaning is plain, then the interpretation need go no further and has concluded. *See United States v. Goins*, 516 F.3d 416, 420 (6th Cir. 2008) (citing *United States v. Palacios-Suarez*, 418 F.3d 692, 697 (6th Cir. 2005)). However, if the meaning is unclear, interpretation next turns to legislative history in an attempt to fill gaps in understanding. *See Parrett*, 530 F.3d at 422 (citing *Wagner*, 382 F.3d at 607).

To date, no Supreme Court opinion addresses the § 1513(b) proof requirement. Similarly, the Sixth Circuit has not evaluated the requisite intent scope. *See United States v. Edwards*, 321 F. App'x 481, 485 (6th Cir. 2009) (unreported) (addressing whether property damage must have occurred and whether threats must be transmitted to the witness); *United States v. Hankins*, 195

F. App'x 295, 299-300 (6th Cir. 2006) (unpublished) (denying a sufficiency of the evidence challenge to a conviction); *United States v. Levy*, 250 F.3d 1015, 1018-19 (6th Cir. 2001) (concerning sentencing and statute's applicability to actual or threatened bodily injury); *United States v. Blair*, 225 F.3d 660, at *2-3 (6th Cir. 2000) (table) (considering an evidentiary challenge); *United States v. Davis*, 992 F.2d 635, 638-39 (6th Cir. 1993) (addressing whether a district court has the power under Rule 29 to enter a judgment of acquittal more than seven days after discharge of a jury); *United States v. Harris*, 943 F.2d 53, at *3 (6th Cir. 1991) (table) (per curiam) (denying a sufficiency of the evidence appeal because "information related to the commission . . . of a Federal offense" includes the location of a suspected felon).

*Plain Language*

The § 1513(b)(2) offense elements, as relevant, include the following: (1) knowingly engaging in conduct (2) that threatened bodily injury (3) with intent to retaliate for information relating to the possible commission of a federal offense provided to a law enforcement officer. *See United States v. Draper*, 553 F.3d 174, 180 (2d Cir. 2009) (citing *United States v. Brown*, 937 F.2d 32, 36 (2d Cir. 1991)) (outlining a similar three-element construction ultimately focused on the same proof standard); *Edwards*, 321 F. App'x at 484 (citing *United States v. Paradis*, 802 F.2d 553, 562 (1st Cir. 1986)) (using a virtually identical three-element construction). The matter before this Court concerns the specific intent element and whether that intent includes knowledge of *federal* officer involvement.[2]

---

[2] This question is different from jurisdiction itself. The plea colloquy did establish federal involvement sufficient to trigger jurisdiction. *See* DE #60 (Transcript) at p. 54, lns. 12-15 (admitting awareness of possible federal offense); *id.* at p. 45, lns. 13-25; p. 46; p. 47, lns. 1-21 (proffering details of underlying federal law enforcement role).

A natural reading of the plain language of the specific intent formulation indicates that the Government must prove knowledge of federal involvement on the part of defendants charged under § 1513(b)(2). The natural reading here is to give meaning and effect to all words that Congress penned, rather than discard some or envision that some must be more important than others. *See Carcieri v. Salazar*, 129 S. Ct. 1058, 1066 (2009) ("[W]e are obliged to give effect, if possible, to every word Congress used.") (quoting *Reiter v. Sonotone Corp.*, 99 S. Ct. 2326, 2331 (1979)). The statute defines the crime as a knowing threat "with intent to retaliate" for "information relating" to a federal crime "given by a person to a law enforcement officer." *See* 18 U.S.C. § 1513(b)(2). Additionally, the statute particularly defines those officials as federal. *See* 18 U.S.C. § 1515(a)(4). To read the statute solely as requiring proof that intent was "to retaliate for information" unnaturally restricts the plain language because the statute specifies the operative "information."  Based on the plain meaning, Congress did not seek to punish any retaliation for information; instead, Congress criminalized retaliation for information provided to federal officers.

Linguistically and syntactically, the plain language supports reading the specific intent of § 1513(b)(2) to require knowledge of a federal official. Reading the statute, as applied in this matter, "intent to retaliate" is modified by the series of phrases constituted by "for information relating to the . . . possible commission of a Federal offense . . . given by a person to a law enforcement officer." This structure means that "intent to retaliate" draws meaning from the subsequent series of phrases, in particular as limiting language. Considering "intent to retaliate" as though the modifying series of phrases fails to exist would be inaccurate, incomplete, and violative of the text. *See Mertens v. Hewitt Assocs.*, 113 S. Ct. 2063, 2069 (1993) ("We will not

read the statute to render the modifier superfluous."); *United States ex rel. Wilson v. Graham County Soil & Water Conservation District*, 528 F.3d 292, 305 (4th Cir. 2008) (finding use of modifiers in statutory language of the False Claims Act to be "deliberate and significant"). In this case, the series of phrases provides further qualification for "intent to retaliate," not a literary aside to be discarded. The United States contends that it must only prove knowing conduct with intent to retaliate: "One cannot knowingly engage in conduct with the intent to retaliate." *See* DE #69 at 3. The remainder of the statute, according to the United States, amounts only to "qualifying jurisdictional factors." *See id.* This reading is incomplete and divorces the precise intent Congress required from the defined crime. The retaliatory intent must be *for* something, and the statute says the retaliation is *for* information provided to a law enforcement officer.

During the Rule 11 colloquy, the Government argued that, given the complex nature of multi-agency task forces, such a reading of § 1513(b)(2) would be unrealistic, substantially limiting prosecutions under the statute. *See* DE #60 (Restricted Transcript) at p. 65, lns. 22-25; p. 66, lns. 1-13. It is up to Congress to match the text of laws with policy advancement. *See, e.g.*, *Youngstown Sheet & Tube Co. v. Sawyer*, 72 S. Ct. 863, 867 (1952) ("The Founders of this Nation entrusted the law making power to the Congress alone . . . ."). Additionally, the reach of federal power is intentionally limited by our scheme of government. *See, e.g.*, U.S. Const. amend. X ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."). Under our limited federal system, this Court must be careful not to overreach and extend statutes into the realm of state governments, where separate statutory penalties for retaliation may exist. *See, e.g.*, Ky. Rev. Stat. Ann. §§ 421.500-421.575 ("Kentucky Crime Victim Bill of Rights"); §§ 524.010-524.140

("Interference with Judicial Administration").

To date, challenges to § 1513(b)(2) convictions have not addressed whether the specific intent required includes *knowledge* of a federal officer's involvement. Challenges have focused on the presence of a "law enforcement officer," as defined in the statute, but not a defendant's knowledge of that officer's involvement. *See, e.g.*, *Draper*, 553 F.3d at 180 (reversing § 1513(b)(2) convictions where jury instructions were erroneous and the involvement of a federal officer had not been proven); *United States v. Johnson*, 161 F. App'x 660, 661 (9th Cir. 2005) (unpublished) (defining the officer's receipt of information as an element of the offense); *United States v. Gaither*, 533 F. Supp. 2d 540, 546 (W.D. Pa. 2008) (finding a government informant to be covered under the statute); *United States v. Ferrugia*, 604 F. Supp. 668, 675 (E.D.N.Y. 1985) (holding that a United States attorney is protected under the statute).

One exception is *Brown*, 937 F.2d at 32, which concerned whether a defendant knew about the involvement of federal authorities. Specifically, the defendant was convicted under § 1513 of threatening to cause bodily harm to his former girlfriend, who had become an informant against him.[3] *See id.* at 33. On appeal, Brown questioned the sufficiency of the evidence, arguing that no *direct* evidence that he knew of his ex-girlfriend's involvement with federal officials had been adduced. *See id.* at 36. To Brown's view, the jury should not have been permitted to infer retaliatory intent based solely on circumstantial evidence. *See id.* Operating under a highly deferential standard, *see id.* at 35, the Second Circuit rejected Brown's challenge, finding that sufficient evidence existed in the record to support a jury finding of retaliatory intent. *See id.* at

---

[3] In its opinion, the Second Circuit just refers generally to § 1513. However, the statutory section discussed is more specifically § 1513(b)(2).

37. *Brown* addressed only evidentiary sufficiency (the intent scope was not contested), but did indicate that a defendant must be "aware of the federal scope of the investigation." *See id.*

Importantly, the *Brown* court considered a § 1513 jury verdict, where this Court is called upon to accept a plea bargain based on a proffer of what the Government could prove at trial. Where the Second Circuit adopted a highly deferential posture to the existing jury verdict, *see id.* at 35, this Court proceeds under Federal Rule of Criminal Procedure 11, which requires a valid factual basis for the plea. *See* Fed. R. Crim. P. 11(b)(3); *United States v. McCreary-Redd*, 475 F.3d 718, 722-26 (6th Cir. 2007) (finding plain error where a district court failed to establish a sufficient factual basis under Rule 11(b)(3)). In the Rule 11 colloquy, Defendant Denham testified that she thought the investigation was only a state matter. *See* DE #60 at p. 53, lns. 7-22.[4] While the Government proffered that it can establish the involvement of a federal officer for

---

[4]  The specific colloquy is as follows:

THE COURT: And what did you think -- or who did you think that he had given information to?

DEFENDANT DENHAM: Well, I didn't really -- all I know is the state police came and got her, you know, so -- and I didn't really understand all the, I guess the legalities of being an informant, how that works. You know, I just knew that he had told somebody that she sold drugs.

THE COURT: Did you know that there were any federal authorities involved?

DEFENDANT DENHAM: No, I didn't have any idea about -- no.

THE COURT: Did you –

DEFENDANT DENHAM: I didn't see the federals there. When they came to arrest her, I only saw the state police.

DE #60 at p. 53, lns. 7-22.

8

*jurisdictional* purposes, and perhaps a jury might take the inferential step discussed in *Brown*,[5] Denham did not admit that she knew a federal law enforcement officer was involved in the matter at issue. Indeed, she explicitly denied such knowledge. *See id.* at pp. 54-55 ("Q: You thought it was completely a state police or state law enforcement matter?  A: Yes, Your Honor, yes, I did.").

Because no binding judicial precedent exists, nor any persuasive precedent directly on point, the Court weighs two different sources of related persuasive precedent, one urged by each party. First, the United States points to *United States v. Yermian*, 104 S. Ct. 2936 (1984), and *United States v. Feola*, 95 S. Ct. 1255 (1975), and asserts that these cases demonstrate that the Supreme Court has discouraged an anti-federal scienter. In contrast, Defendants focus on the neighboring statutory section, 18 U.S.C. § 1512, and argue that its explicit exclusion of federal scienter proof demonstrates that Congress sought to require such proof for § 1513 offenses.

Turning first to the United States's suggested basis for finding that specific intent under § 1513 does not extend to knowledge of federal involvement, the precedent is well-taken and should be considered. *Yermian*, a 5-4 decision, addressed whether the Government must offer proof of actual knowledge of federal agency jurisdiction in order to gain a conviction under 18 U.S.C. § 1001 for making a false or fraudulent statement in any matter within the jurisdiction of

---

[5] Beyond the jurisdictional proffer, the Government stretched to imply knowledge of federal officer involvement. Specifically, the United States noted that a federal agent had been on the front page of a newspaper with an ATF jacket as to a previous arrest, *see* DE #60 at p. 73, lns. 16-21, suggesting that this publicity could imply knowledge. Additionally, the United States pointed to an online discussion board, where federal involvement had purportedly been discussed. *See id.* at p.73, lns. 24-25; p. 74, lns. 1-3. Finally, the United States noted individuals already in jail were "well-known to the community." *See id.* at p. 74, lns. 5-11. This may be significant at trial, but Denham explicitly denied knowledge of federal involvement. *See id.* at pp. 54-55.

a federal agency. *See Yermian*, 104 S. Ct. at 2939. In particular, Yermian had been convicted of

three counts of making false statements on a "Worksheet for Preparation of Personnel Security

Questionnaire," which he claimed not to know would be transmitted to and evaluated by the

United States Department of Defense. *See id.* at 2938. At trial, Yermian requested a jury

instruction requiring the Government to prove actual knowledge of federal agency jurisdiction;

however, the trial court rejected the instruction. *See id.* On appeal, the Ninth Circuit determined

that the statutory language "knowingly and willfully" should be read to modify both the making

of false statements and the requirement that the matter be within the jurisdiction of a federal

agency.[6] *See id.* at 2939. The Supreme Court rejected this logic, determining that the "within the

jurisdiction" requirement should be construed as just that: only a jurisdictional requirement. *See*

---

[6] The relevant language of § 1001, as amended by subsequent Congresses, reads as follows:

(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--

(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;

(2) makes any materially false, fictitious, or fraudulent statement or representation; or

(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both. If the matter relates to an offense under chapter 109A, 109B, 110, or 117, or section 1591, then the term of imprisonment imposed under this section shall be not more than 8 years.

18 U.S.C. § 1001(a).

*id.* at 2939-40. Using terms like "certainly" and "clear," the Court concluded "there is no basis

for requiring proof that the defendant had actual knowledge of federal agency jurisdiction." *Id.* at

2940. Were this Court now considering the first element of a § 1513 offense, and specifically the

reach of the term "knowingly," the *Yermian* decision might have more influence. However, the

specific intent of § 1513 flows instead from the third element, which focuses on the intent to

retaliate for information provided to a law enforcement officer. The question before this Court is

how far the intent carries and what knowledge of federal officer involvement is required.

Accordingly, *Yermian* offers one example of a decision on a textually distinct statute that

opposes an anti-federal scienter requirement, and this but generally related decision offers little to

persuade the Court. As *Yermian* itself instructed, the Court must "turn first to the language of the

statute." *Id.* at 2939.

More significant for the United States is *Feola*, a 7-2 decision that addressed whether a

conviction under 18 U.S.C. § 111 for conspiring to assault a federal officer requires proof that the

accused knew his victim to be a federal officer.[7] *See Feola*, 95 S. Ct. at 1259-60. Essentially,

---

[7] As currently enacted, the relevant portion of § 111 reads as follows:

(a) Whoever–

(1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any
person designated in section 1114 of this title while engaged in or on account of
the performance of official duties; or

(2) forcibly assaults or intimidates any person who formerly served as a person
designated in section 1114 on account of the performance of official duties during
such person's term of service,

shall, where the acts in violation of this section constitute only simple assault, be fined
under this title or imprisoned not more than one year, or both, and where such acts
involve physical contact with the victim of that assault or the intent to commit another

Feola and three conspirators had arranged to sell heroin to buyers, whom the four were going to

trick by giving the buyers only sugar or, failing that, simply rob. *See id.* at 1259. Unbeknownst to

Feola and his team, the buyers were undercover narcotics agents, who recognized the trick in

time, resulting in charges. *See id.* At trial, the defendants sought a jury instruction that, for the

conspiracy count, would require the Government to prove the defendants knew the buyers were

federal officers; however, the trial court rejected the instruction. *See id.* The Second Circuit

reversed, citing a line of cases that "scienter of a factual element that confers federal jurisdiction,

while unnecessary for conviction of the substantive offense, is required in order to sustain a

conviction for conspiracy to commit the substantive offense." *Id.*

     *Feola*, by analyzing the text, the statute's purposes and means, and legislative history,

determined that a § 111 violation does not require an anti-federal scienter. *See id.* at 1264. The

effort centered on discerning the intent of Congress in the context of § 111, but notably, the

defendant did not advocate that the statute substantively required knowledge of federal

involvement. Neither the text of § 111 nor the legislative history supported a reading that would

require, in the majority's view, proof that a defendant assaulted a known federal officer. The

Court also noted that the moral component of the crime involved – assault – obviously did not

hinge on knowledge of the federal character of the person involved. Thus, eschewing an anti-

federal scienter creates no "snare for the unsuspecting." *See id.*

     *Feola* and *Yermian* (decided 5-4 only nine years later) impact the analysis of § 1513.

Without question, retaliatory threats against a witness, for providing information, are morally

---

felony, be fined under this title or imprisoned not more than 8 years, or both.

18 U.S.C. § 111(a).

repugnant irrespective of the information recipient's governmental affiliation. The cases also support an observed trend against requiring knowledge of jurisdictional facts. *See, e.g.*, *United States v. Cooper*, 482 F.3d 658, 664-65 (4th Cir. 2007) (describing legal "backdrop" and observation "that jurisdictional elements generally assert federal jurisdiction but do not create additional statutory elements as to which defendants must have formed the appropriate mens rea"). However, both *Feola* and *Yermian* ultimately go only as far as the statutes they construe. Sections 1512 and 1513 are distinct from and have a unique interplay compared to either § 111 or § 1001. Congress's intent, as reflected in the text, must govern, and neither *Feola* nor *Yermian* rules the day with respect to § 1513.

From a different approach, Defendants's focus on comparing § 1512 and § 1513 yields valuable information that this Court finds highly persuasive. Section 1512 addresses, inter alia, witness tampering. In a direct corollary to § 1513, it bars a threat against any person with intent to "prevent the communication to a law enforcement officer . . . of information relating to the commission or possible commission of a federal offense[.]" 18 U.S.C. § 1512(a)(2). The two statutes share the definitional section, § 1515, which defines "law enforcement officer" as used in both. Congress passed these sections at the same time. *See infra* n. 8.

While the Government suggests that § 1513 should be viewed in isolation, looking to neighboring sections of statutes is a well-recognized component of statutory interpretation. *See Negusie v. Holder*, 129 S. Ct. 1159 (2009) (". . . 'the language and design of the statute as a whole' is instructive in determining the provision's plain meaning") (quoting *Kmart Corp. v. Cartier, Inc.*, 108 S. Ct. 1811, 1818 (1988)). Relative to the statutory sections, one key difference involves a special provision of § 1512 that explicitly excludes anti-federal scienter as part of the

required proof:

> (g) In a prosecution for an offense under this section, no state of mind need be proved with respect to the circumstance--
>
>> (1) that the official proceeding before a judge, court, magistrate judge, grand jury, or government agency is before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a Federal grand jury, or a Federal Government agency; or
>>
>> (2) that the judge is a judge of the United States **or that the law enforcement officer is an officer or employee of the Federal Government or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant**.

18 U.S.C. § 1512(g) (emphasis added); *see United States v. Harris*, 498 F.3d 278, 289 (4th Cir. 2007) (noting that "1513 contains no provision equivalent to 1512(g)(2)"). Such differences in neighboring statutes warrant attention and have significance. *See Russello v. United States*, 104 S. Ct. 296, 300 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)). Here, the fact that § 1512 excludes proof of anti-federal scienter suggests strongly that § 1513 requires such proof.[8]

The difference cannot be explained by the separate emphases of § 1512 and § 1513, which respectively address tampering with the provision of information and retaliating for information provided. In fact, the emphases further support this Court's conclusion. In § 1512 prosecutions, the key information may not yet have been provided, which makes a defendant

---

[8] These provisions became law together as part of the Victim and Witness Protection Act of 1982, which connects them even more substantially. *See* Pub. L. 97-291, § 4(a), 96 Stat. 1250 (1982).

14

much less likely to know of the involvement of a federal officer. Accordingly, Congress preemptively added language that no anti-federal scienter need be proven. *See Harris*, 498 F.3d at 287 n.6 ("Reading 1512(g)(2) to apply only to a defendant who has contemplated a particular officer would produce absurd results."); *United States v. Baldyga*, 233 F.3d 674, 680-81 (1st Cir. 2000) ("We also want to dispel any notion that the defendant's intent to hinder communication must include an awareness of the possible involvement of federal officials."). However, in § 1513 prosecutions, the information at issue has already been provided to law enforcement, and the defendant's intent is to retaliate for that completed act. *See, e.g.*, *Edwards*, 321 F. App'x at 482-83 (involving a defendant arrested on federal charges who learned the informant's name from the federal criminal complaint and then instructed his girlfriend to retaliate against the informant); *United States v. Millbrook*, 553 F.3d 1057, 1060-61, 1066 (7th Cir. 2009) (concerning a defendant arrested on federal charges who knew his estranged wife had given information to a parole officer and threatened to "get [her] bitch ass"); *United States v. Smith*, 387 F.3d 826 (9th Cir. 2004) (defendant's son arrested for burglary after FBI investigation, neighbor's daughter told FBI she saw defendant's son committing the crime, and defendant threatened to kill neighbor's family). Such targeted action proceeds from targeted intent, as the plain meaning of the statute prescribes. Because § 1513 operates in a different circumstance than § 1512, the plain language requirement of § 1513 produces no absurd results, instead reflecting simply the application of a Congressional lawmaking choice.

Although not addressed by either party, the Court also has evaluated case law concerning other neighboring statutory sections within the same statutory scheme. Title 18, Chapter 73, uses the header "Obstruction of Justice" and includes twenty-one statutory sections, including § 1512

and § 1513. *See* 18 U.S.C. §§ 1501-1521. Two sections of particular relevance are § 1503,[9]

"Influencing or injuring officer or juror generally," and § 1510,[10] "Obstruction of criminal

investigations." Prior to the addition of §1512 and § 1513 to the statutory scheme, prosecutors

---

[9] Specifically, the current text of 1503(a) reads as follows:

(a) Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate judge, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b). If the offense under this section occurs in connection with a trial of a criminal case, and the act in violation of this section involves the threat of physical force or physical force, the maximum term of imprisonment which may be imposed for the offense shall be the higher of that otherwise provided by law or the maximum term that could have been imposed for any offense charged in such case.

18 U.S.C. § 1503(a).

[10] The current text of 1510(a) and (c), in particular, is the following:

(a) Whoever willfully endeavors by means of bribery to obstruct, delay, or prevent the communication of information relating to a violation of any criminal statute of the United States by any person to a criminal investigator shall be fined under this title, or imprisoned not more than five years, or both.

. . .

(c) As used in this section, the term "criminal investigator" means any individual duly authorized by a department, agency, or armed force of the United States to conduct or engage in investigations of or prosecutions for violations of the criminal laws of the United States.

18 U.S.C. § 1510(a), (c).

16

utilized § 1503 and § 1510 to address retaliatory or obstructive conduct.[11] *See* Cheryl Anne

Adams, *Witness Tampering*, 24 Am. Crim. L. Rev. 755, 756 (1987). These statutory sections

have enduring significance for the instant matter because courts, particularly including the Sixth

Circuit, have determined those statutes to require proof of an anti-federal scienter. *See United

States v. Baker*, 494 F.2d 1262, 1265 (6th Cir. 1974) (outlining that, for a conviction under §

1503, as it then existed, the Government must prove the defendant "knew or was aware of the

existence of a pending federal proceeding and that [the one against whom threats are made] was a

witness therein" ); *United States v. Lippman*, 492 F.2d 314, 317 (6th Cir. 1974) (indicating that,

for a conviction under § 1510, "[i]t is required that the defendant have actual knowledge that the

intended recipient of the information be a federal criminal investigator") (citing *United States v.

Williams*, 470 F.2d 1339, 1342 (8th Cir. 1973)). These decisions have particular persuasiveness

here because § 1503 and § 1510, like § 1513, lack the § 1512(g) subsection that excludes the

anti-federal scienter requirement.

  The § 1510 parallel is especially close. The statute makes it illegal to bribe a person to

"prevent the communication of information relating to" a federal crime to a "criminal

---

[11] Commentators sometimes include 18 U.S.C. § 1505 with § 1503 and § 1510. *See, e.g.*,
Tina M. Riley, Note, *Tampering with Witness Tampering: Resolving the Quandary Surrounding
18 U.S.C. 1503, 1512*, 77 Wash. U. L.Q. 249, 256 (1999) (citing the Senate Report extensively).
However, § 1505 concerns "proceedings before departments, agencies, and committees," so lacks
relevance here. Nonetheless, the Court notes that the Sixth Circuit appears not to have addressed
whether anti-federal scienter must be proven in § 1505 prosecutions. *See United States v.
Blackwell*, 459 F.3d 739, 762 (6th Cir. 2006) (affirming a conviction for obstruction of an SEC
proceeding); *Hamilton v. Reed*, 29 F. App'x 202, 203 (6th Cir. 2002) (unpublished) (finding that
§ 1505 does not create a private right of action); *United States v. Cushenberry*, 142 F.3d 437 (6th
Cir. 1998) (table) (affirming a conviction by concluding 404(b) evidence of specific intent was
admissible); *United States v. Fruchtman*, 421 F.2d 1019, 1021 (6th Cir. 1970) (affirming a
conviction where a defendant objected to the trial court's application of the term "proceeding" in
the statute).

investigator." 18 U.S.C. § 1510(a). A "criminal investigator" is defined as a federal agent. *See id.* § 1510(c). Under this scheme, *Lippman* requires proof of an anti-federal scienter. Without the carve-out in § 1512(g), § 1512 surely also would require such knowledge. Thus, within the same statutory scheme, this Court's plain reading of § 1513 is entirely consistent with controlling precedent for related statutory sections within Chapter 73. This result is simply as close as the Court can come to locating and following controlling precedent in the matter before it now.

Based on the plain language and persuasive precedent discussed, the analysis should proceed no further. *See Goins*, 516 F.3d at 420 (citing *Palacios-Suarez*, 418 F.3d at 697). The plain language of § 1513 itself, plus the comparative analysis with neighboring statutes in the same statutory scheme, compels the Court's reading.  On a plain-language basis, the proof of specific intent required for a conviction under § 1513 includes proof that the defendant knew a person gave information to a federal law enforcement officer.

*Legislative History*

The legislative history available concerning § 1513 buttresses the Court's analysis of the statutes. Generally, the history of the Victim and Witness Protection Act of 1982 ("VWPA"), which included § 1512 and § 1513, is somewhat scarce. One committee report exists, and it emerged from the Senate Judiciary Committee. *See* S. Rep. No. 97-532 (1982). Ultimately, the Senate version discussed in the report was amended by the House to match its own bill more closely, but the report still provides valuable commentary. The VWPA drew considerably from a bill considered but not enacted by the prior Congress; that bill was entitled the Criminal Code Revision Act of 1980 ("CCRA"). The House Committee on the Judiciary issued a report on that bill, which also yields valuable information. *See* H.R. Rep. No. 96-1396 (1980). Beyond these

18

two reports, the legislative history consists of a hearing record from 1982, *see Hearing on S.2420 Before the Subcomm. on Criminal Law of the S. Comm. on the Judiciary* (1982); a hearing record from 1980, *see Compensating Crime Victims: Hearings on H.R. 1899 Before the Subcomm. on Criminal Justice of the H. Comm. on the Judiciary*, 96th Cong. (1980); and various entries in the Congressional Record from both years. *See* 128 Cong. Rec. 27378, 27378-92 (1982) (consideration and passage of Senate amendment to S.2420 in the House on October 1, 1982); 128 Cong. Rec. 26803, 26803-11 (1982) (consideration and passage of amended S.2420 in the Senate on October 1, 1982); 128 Cong. Rec. 26348, 26348-63 (1982) (consideration and passage, with amendments, of H.R. 7191 and S.2420 in the House on September 30, 1982); 128 Cong. Rec. 23391, 23391-404 (1982) (consideration and passage of S.2420 in the Senate on September 14, 1982); 126 Cong. Rec. 25891, 25891 (1980) (statement of Representative Peter Rodino before the House on September 17, 1980). In weighing these sources, the Court observes the Supreme Court's strong preference for committee reports. *See Garcia v. United States*, 105 S. Ct. 479, 483 (1984) ("In surveying legislative history we have repeatedly stated that the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill . . . We have eschewed reliance on the passing comments of one Member and casual statements from the floor debates.") (citations omitted).

Turning first to the Senate Report from 1982, it provided discussion of § 1512 and § 1513, with a considerable part of the discussion of § 1513 simply incorporating earlier § 1512 comments. *See* S. Rep. 97-532 at *14. At the outset, this Report establishes that § 1512 and § 1513 were crafted and considered together, which supports the significance this Court attached to the plain-language distinction between the two. *See id.* Additionally, the Report confirms that §

19

1503 and § 1510 served to address tampering with witnesses and informants prior to the passage of § 1512 and § 1513. *See id.* According to the Report, "[t]he intent of section 1513 is to expand considerably the protections afforded by [§§ 1503, 1505, and 1510] to victims and witnesses." *Id.* at *20. Importantly, the Report indicates that the Committee deliberately chose against a broader definition of "informant" because "[t]his would vastly increase federal cognizance over such offenses without any need for an increase having been demonstrated." *Id.* at *22. The Report continues, "[t]hus, the Committee has retained the current **restriction on the offense** to the giving of information relating to an offense (or possible offense) to a law enforcement officer, as defined in section 1514."[12] *Id.* (emphasis added) (footnote omitted). Notably, this discussion of the offense is in the section titled "Provisions of the Bill, As Reported," *not* in the subsequent section titled "Jurisdiction." *See id.* While the Report addressed a Senate version of the VWPA that was subsequently amended, in particular to feature House suggestions about how to interface § 1512 and § 1513 with § 1503, § 1505, and § 1510, the changes brought no broader definition of "informant," nor did the changes alter the conclusion that "law enforcement officer" is part of the substantive offense, not just a jurisdictional element. Indeed the VWPA features these sections as discussed in the Report, which adds significance to the Report's discussion. Ultimately, while the Report's discussion of § 1513 includes no statement directly addressing the question before the Court, the discussion can fairly be read as consistent with the Court's plain-language conclusion.

Turning to the House Report, published in 1980,[13] the discussion provides additional

---

[12] This definition of "law enforcement officer" is now at § 1515(a)(4).

[13] The Senate Report acknowledged that, "[i]n putting together [the bill], Senators Heinz and Laxalt adopted a number of the provisions which appeared in the [CCRA] . . . ." S. Rep. 97-532, at *10.

support for this Court's position and no reason to draw counter conclusions. The Report

describes the drafters' intentional decision to "specify the Federal jurisdiction over an offense in

a separate subsection of the offense." *See* H.R. Rep. 96-1396, at 16. This decision emerged from

the House Committee's identification of previous deficiencies in criminal law, to include:

> (1) The means of causing the harm (for example, interstate travel) is the focus of attention instead of the nature of the misconduct and the actor's culpability for that conduct
>
> . . .
>
> (3) Circumstances giving rise to Federal jurisdiction are often described inconsistently . . . [and]
>
> . . .
>
> (4) Some current laws have been interpreted as requiring that the prosecution prove that the defendant had a particular mental state in connection with the jurisdictional basis of the offense, even though the existence of such an "anti-Federal" intent has nothing to do with the actor's culpability.

*Id.* This insight into the drafters' approach is valuable and supports this Court's reading of §

1513(b)(2). That is, the fact that Congress gave specific attention to separating offense elements

and jurisdictional elements because they had been confused speaks strongly for interpreting §

1513(b)(2) to include as elemental all language specified by Congress. Just as the Court surmised

based on plain language, trying to subdivide the offense language into offense elements and

jurisdictional elements would be illogical and erroneous. The House Report even cautioned

against any other effort at subdividing elements of the statute as to state of mind. *See id.* at 34

(describing § 302 of the CCRA, where the House provided a rule that "makes it unnecessary to

distinguish among the components of an offense (conduct, circumstances and results) in order to

determine the applicable state of mind").

      While this Court is mindful of the Supreme Court's caution against overvaluing

21

statements from the floor, *see Garcia*, 105 S. Ct. at 483, the Court does take note of a lengthy

statement offered by Representative Peter Rodino in support of the VWPA. *See* 126 Cong. Rec.

25891 (1980). In his statement, Rodino (the House Judiciary Committee Chair for the 96th

Congress) cited repeatedly to the 1980 House Report, which lends more credibility to his

remarks. Of note, with those citations, Rodino offered useful discussion of the principal issue

before this Court. Citing page 34 of the House Report, Rodino explained, "As in the [CCRA],

**the state of mind** applicable to conduct in the offenses established by section 3 of the bill **also**

**applies** (unless otherwise specified) **to any circumstances** and results **required by the**

**offenses**." *Id.* at 26350 (emphasis added). Pointing to pages 15 and 16 of the House Report,

Rodino describes the rationale for the special anti-federal scienter provision in § 1512:

> This provision is necessary because of the convention that the state of mind applicable to
> the conduct required for the offense also applies to any circumstances or results that are
> required. Because the terms 'official proceeding' and 'law enforcement officer' are
> defined in section 1515 to mean Federal proceeding and Federal officer . . . it would be
> necessary for the prosecution, absent this provision, to prove that the defendant **knew** the
> official proceeding or law enforcement officer was a Federal proceeding or a Federal
> officer . . . .

*Id.* at 26351 (emphasis added). This comment from Rodino, tied to the House Report, exactly

addresses the current issue and indicates that, without the special provision of § 1512(g), then §

1512 would have required proof of known federal involvement. Rodino also spoke to the fact

that 1513 has no anti-federal scienter carve-out. In explaining why § 1513 differs, his summary

stated:

> By the nature of the [§ 1513] offense, the wrongdoer knows that the person retaliated
> against has been a party to or witness in a Federal proceeding or has reported information
> to a Federal law enforcement officer. It is therefore unnecessary to preclude the
> applicability of the conventions on state of mind.

*See id.* at 26354 n.13. Per the summary, § 1513 does not exclude anti-federal scienter because

knowledge of federal involvement is bound up in the "nature of the offense." This plainly

corroborates the Court's reading of the applicable language.

Additional legislative history further supports the Court's conclusion. Before the House

on October 1, 1982, Rodino read into the record a prepared "analysis of the Senate amendment

and the changes made in the House-passed bill." *See* 128 Cong. Rec. 27378, 27390 (1982). This

analysis, citing page 34 of the House Report, included the following: "The language of the Senate

amendment carries forward the format, conventions, and techniques used in the House-passed

bill. Thus, for example, the convention that **the state of mind applicable to conduct also**

**applies** (unless otherwise provided) **to any circumstances** or results **required by the offense**."

*Id.* at 27391 (citations omitted) (emphasis added). This description directly addresses the issue

before this Court and again confirms that the state of mind requirement under § 1513 extends to

knowledge of the involvement of a federal officer. While comments on the floor of Congress that

cite an official report cannot fairly be equated with language from a report, such comments

should receive appropriate weight.

Based on the legislative history, this Court's plain-language determination stands as

correct.[14] The specific intent element of a § 1513(b)(2) offense requires the Government to prove

that a defendant knew of the involvement of a federal officer. Primarily from reports, but also

from hearing records and the Congressional Record, that reading of § 1513 is the accurate result

---

[14] Because the Court resolves the issue of statutory interpretation on plain language, but still includes additional analysis of legislative intent out of an abundance of caution, the Court need not take another step still and progress to an analysis under the rule of lenity. *See Liparota v. United States*, 105 S. Ct. 2084, 2089 (1985) (addressing the rule of lenity in the context of a mens rea determination and collecting citations to illustrate "longstanding recognition of the principle that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity'").

23

and reflects Congress's intent.  Congress distinguished § 1512 from § 1513 for intentional reasons, and the witting omission from § 1513 must impact application of that statute.

<u>Conclusion</u>

Having resolved this issue of statutory interpretation, and based on the proof offered in the pending Rule 11 colloquy, the Court cannot accept a guilty plea from Defendant Denham under § 1513(b)(2). The plea agreement (DE #67) and plea colloquy indicate that Denham is not admitting guilt to each essential element of the offense charged.

As to Defendant Pitman, the Court had not initiated the Rule 11 colloquy, so the Court cannot determine whether a plea may be acceptable. Defendant Pitman shall, within ten days, indicate whether he continues to seek rearraignment in light of this decision.

This decision affects the plea status, but does not prejudice the Government's opportunity to prove each essential offense element at trial. The United States may be able to prove to a jury what Denham has refused to admit. However, a guilty plea requires guilt, and Denham does not concede a full basis for rearraignment in this case.  The matter should promptly be set for trial before the District Judge.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this decision, which substantively is a dispositive recommendation, issued under subsection (B) of that statute. As defined by § 636(b)(1) and Fed. R. Crim. P. 59(b), within ten days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for de novo consideration by the District Court. The parties should consult the aforementioned statute and rule for specific appeal rights and mechanics. Failure to object in accordance with Rule 59(b) waives a party's right to review.

This the 8th day of September, 2009.

Signed By:

**Robert E. Wier**

**United States Magistrate Judge**